**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No.   21-cr-363 (CJN)** |
| **JENNIFER PARKS** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Jennifer Parks, by her attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mrs. Parks is a 61 year-old grandmother of three who has lived a simple, law abiding life up until the instant offense. She is among the least culpable group of defendants who walked into the Capitol building, had no confrontation with law enforcement, and walked out with no incident after 15 minutes of walking around in non-sensitive areas. The second that she saw a man injured inside, she realized there may have been violence previously and left immediately. Most notably, she went inside the building thirty minutes after the Capitol had already been breached and she had no idea about the chaos that had transpired until later that night when she watched the news. Mrs. Parks has sincerely accepted responsibility for her conduct. Based on all of the factors discussed below, Mrs. Parks respectfully requests that the Court impose a period of probation of 12 months.

## BACKGROUND

Mrs. Parks entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for her participation in the events on January 6, 2021.  On that day, she attended the "Save America" rally where she listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]" After the rally, Mrs. Parks, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside.  Mrs. Parks did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building.  Mrs. Parks will appear for sentencing on December 8, 2021.  She has reviewed the Pre-Sentence Investigation Report and does not have any further objections to its contents.

## ARGUMENT

### I.  Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing.  Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a).  Those factors include

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

(a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

## II.     **Imposing a Sentence of Twelve Months' Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

### a.  **Mrs. Parks' Personal History and Characteristics**

Mrs. Parks was born in Pomona, California and is the youngest of three siblings.  Her family moved to Flagstaff, Arizona when she was two years old and grew up there in a close knit family.  Mrs. Parks believes she lived a sheltered childhood and describes herself during her adolescence as always being a "goody two shoes."  She comes from a military family, her father being a World War II veteran and her brother being a United States Air force veteran.  She married her husband at the young age of 19, who is also a retired United States Army veteran. As a result of his military service, Mrs. Parks moved quite a bit but finally settled in Leavenworth, Kansas where she has been since 2006.  She has two children and three grandchildren, who she helps to take care of because her daughter is a single mother.  Mrs. Parks also is the primary caregiver for her mother, who is 90 years

old and lives in an assisted living environment.  Mrs. Parks is retired but was a piano technician for over thirty years.  She now focuses on being a caregiver for her grandchildren and her mother.  Her husband is still employed with the government.

On January 6, 2021, Mrs. Parks traveled to Washington, D.C. to attend the rally with her friend.  She had no intent to storm the Capitol building and only wished to peacefully protest.

### b.  Nature and Circumstances of the Offense

Mrs. Parks accepted responsibility for the offense as soon as law enforcement interviewed her after she returned home from Washington, D.C.  She explained to the FBI that she thought she was attending a peaceful rally in support of former President Donald Trump.  She admitted that she went with her friend to the Capitol Building after being told that there would be a peaceful protest there after the rally.[2]  The former President told his supporters that they would go down to the Capitol *together* as he said, "we're going to walk down to the Capitol."[3] Mrs. Parks was hesitant about going inside the building but regretfully followed her friend as she did not want to leave her alone or be separated from her.  It is important to note that while Mrs. Parks explained to the FBI that she entered through a broken door,

---

[2] For an hour, President Trump encouraged his supporters to "fight" for him.  He said, "We will not let them silence your voices...*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them...[if the election is certified], you will have an illegitimate president.  That's what you'll have.  And *we* can't let that happen...And *we* fight.  *We* fight like hell.  And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

[3] Id.

she only learned the door was broken after she watched the news that night and realized that a mob had broken the door down.  While she knew it was not a wise decision to enter the building, at the time she did, she did not observe signs of forced entry.  She acknowledges, however, that common sense would dictate that the doors to the Capitol building are not typically wide open.  Had she saw signs of violence, she would never have entered and in fact, she left the building as soon as she saw a man that was injured inside.

While inside the building for 15 minutes, Mrs. Parks did not have any confrontation with law enforcement, did not destroy anything, and had no idea what had transpired just an hour before she arrived.  This conduct was so completely out of Mrs. Parks' good character that she has exhibited for the past 60 years. Individuals who know her from her community describe her as a "dedicated wife, mother, grandmother, daughter, and as a caregiver." *See* Exhibit 1, Character Letters.  Her sister-in-law describes her as "conscientious, honorable, loyal, and responsible person." *Id.*



After January 6, 2021, Mrs. Parks has been nothing but embarrassed for her conduct. She never imagined the type of negative attention she would receive from the media and her local community. Unfortunately, when a news outlet printed the original affidavit in support of the criminal complaint, her phone number was listed on the document accidentally. Mrs. Parks received countless hate text messages and voice mails. She had to change her number as a result. She has never received such scrutiny and judgment from others and has been emotionally affected by being in the spotlight. Shortly after Mrs. Parks was arrested for the instant offense and released on conditions, she was accidentally re-arrested when attempting to shop at her husband's former military base. She was absolutely mortified by this experience and as a result her liberty was restrained in error for several additional hours.

Mrs. Parks has expressed true remorse throughout this entire process and her continued remorse is further reflected in the letter she wrote to the Court. In her letter, she states:

> "If I could have that day back, I would not have gone to Washington, D.C., and I certainly would not have gone into the Capitol building. I sincerely apologize for my actions. I believe I am wiser and more discerning now then I was then and I will spend years trying to make it up to the people I've disappointed."

*See* Exhibit 2, Letter from Jennifer Parks.

**c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate**

**Deterrence, and the Need to Avoid Unwanted Sentencing Disparities**

The request for twelve months' probation acknowledges the need to promote respect for the law and provide just punishment.  United States Probation recommends 24 months of probation, however Mrs. Parks has had a perfect record on pre-trial supervision since April.  Two years of supervision is not necessary for an individual such as Mrs. Parks who has accepted full responsibility, does not even have a traffic ticket in her past, and has already been supervised for the past 8 months.  She has also been adequately deterred from any future conduct as she has been in the spotlight in her community, arrested twice for the same charge, and has been literally shunned by hundreds of random people calling her and leaving her hateful messages.

Furthermore, a sentence of 12 months' probation is in line with similar past sentences imposed.  For example, in *United States v. Danielle Doyle*, 1:21-CR-324 (TNM), the court imposed a sentence of 2 months' probation.  Like Mrs. Parks, the defendant in that case walked through the building for about 20-25 minutes with no incident and left.  However, Mrs. Parks is less culpable than Mrs. Doyle because she did not climb through a broken window like Mrs. Doyle did.  This case is more similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM) where the court imposed a sentence of 12 months' probation.  In that case, the defendant accepted responsibility early on, did not pre-plan or coordinate his activities, did not go far into the Capitol building, and left when asked to do so by law enforcement.

7

This case can be distinguished from those who received lengthier periods of probation.  For example, the Court in *U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN), imposed 36 months' probation for a defendant who had no criminal history, however showed a lack of remorse to the FBI during a recorded interview.  In that case, the government recommended that the defendant serve two of those months on home detention, however the court imposed 60 hours of community service instead.  In the instant case, Mrs. Parks has served 8 months of supervision already and has been remorseful from day one.  The likelihood for recidivism in her situation is virtually non-existent based on her lack of criminal history, remorse, and supervision she has already undergone with a perfect record.  Similarly, in *U.S. v. Jordan Stotts*, 21-CR-272 (TJK), the court imposed 24 months' probation for a defendant who shouted at MPD officers and posted comments following January 6 suggesting he may not have been remorseful for his actions.

In light of the 3553(a) factors, the likelihood of recidivism for an individual like Mrs. Parks is virtually non-existent.  General deterrence has also been served as the whole world has already seen the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge.

## **CONCLUSION**

For the reasons stated above, Mrs. Parks respectfully requests that the Court impose 12 months' probation.  Mrs. Parks also requests that a fine not be imposed in light of her obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org