**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00363(CJN)** |
| **v.** | : | |
| | : | |
| **JENNIFER PARKS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Jennifer Parks to 30 days' home detention, as part of a three-year term of probation, 60 hours of community service, and $500 in restitution.

## I.    Introduction

The defendant, Jennifer Parks, and her friend, Esther Schwemmer,[1] participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage. The government recognizes that Parks did not personally engage in or espouse violence or property destruction and accepted responsibility early. The defendant stands before this Court to be sentenced on a misdemeanor conviction, but her conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm

---

[1] Separately charged in *United States v. Schwemmer*, 21-cr-364, and scheduled to be sentenced on December 21, 2021.

law enforcement officers, breach the Capitol, and disrupt the proceedings. But for her actions alongside so many others, the riot likely would have failed.

Parks pleaded guilty to one count of 40 U.S.C. § 5104(e)(2) (G), Parading, Demonstrating, and Picketing in a Capitol Building. A term of home detention as part of a sentence of probation is appropriate in this case.

## II.    Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to the defendant's conduct and behavior on January 6.

### Jennifer Parks' Role in the January 6, 2021 Attack on the Capitol

On January 6, 2021, Parks and Schwemmer traveled to Washington, D.C., from their homes in Kansas to attend the "Stop the Steal" rally. After attending the former President's rally, Parks and Schwemmer walked to the U.S. Capitol Building and remained together while present on the Capitol's grounds. They approached the westside of the building, where they observed people running up the stairs and climbing the walls of the Capitol. Schwemmer took photographs, including Photo 1, of these rioters on the westside of the Capitol Building.

Photo 1.



Later, Parks and Schwemmer traveled to the eastside of the Capitol Building, where Schwemmer

took additional photographs and she and Parks joined a crowd.

Photo 2.



Parks and Schwemmer eventually entered the Capitol Building through an entrance where the doors had been broken and opened. Once inside the Capitol Building they talked with other individuals and took photographs, before proceeding up a circular staircase to the second floor where they joined a group of people who were praying and singing the U.S. National Anthem. Photos 3 and 4 are screenshots of Parks, dressed in a dark green jacket, jeans, and red,

white and blue ski jacket, and Schwemmer, dressed in a brown Carhartt type jacket, a Trump

2020 flag wrapped around her, a backpack, and a Make America Great Again beanie hat, inside

the small House Rotunda on the first floor of the Capitol Building.  Parks' image is circled in

Photo 3.

Photo 3.



Photo 4.



 The government does not currently have evidence that Parks and Schwemmer personally engaged in any destructive or violent activity while inside the Capitol Building, but only that they exited the building after being directed to do so by law enforcement officers. Photo 5 shows Schwemmer being directed where to exit the building, while Photo 6 shows Parks after she received the same directions and her exit from the building.

Photo 5.





In total, Parks and Schwemmer spent approximately 15 minutes inside of the Capitol. Both

Parks and Schwemmer have admitted that they knew at the time they entered the U.S. Capitol

Building that they did not have permission to do so and illegally paraded, demonstrated inside the Capitol Building during a riot.

*Jennifer Parks' Interview*

Early in the investigation, on January 17, 2021, Parks agreed to be interviewed by law enforcement. She accepted responsibility for her actions and admitted that she had entered the Capitol. She stated that she believed she and Schwemmer were inside the Capitol for 30 minutes to one hour. She stated that she and Schwemmer entered the building through a lower door with no stairs and then proceeded up a round staircase to the second floor where she saw groups of people praying and singing. She joined the group singing the U.S. national anthem on the second floor of the building. She admitted that she and Schwemmer were directed to leave the building by a police officer.

Parks also informed the investigating law enforcement officers that she did not post any of her January 6, 2021, activities on social media and the investigation did not find evidence of any posts.

*The Charges and Plea Agreement*

On April 15, 2021, Parks was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On April 23, 2021, Parks was arrested. On May 14, 2021, Parks was charged by Information with the same four offenses. On September 28, 2021, Parks pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. Under the plea agreement, the Defendant agreed to pay $500 in restitution to the Department of the Treasury.

### III.     Statutory Penalties

Parks now faces a sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted

by the plea agreement and the U.S. Probation Office, she faces up to six months of imprisonment

and a fine of up to $5,000.[2] She must also pay $500 in restitution under the terms of her plea

agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79

(D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not

apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court

must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and

characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the

offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford

adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct. §

3553(a)(6). We therefore turn to these factors.

#### A.     The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021, is a criminal offense unparalleled in

American history. It represented a grave threat to our democratic norms; indeed, it was one of the

only times in our history when the building was literally occupied by hostile participants. By its

very nature, the attack defies comparison to other events. So, too, does the conviction this

---

[2] Because Parks has pled guilty to a petty offense, a term of supervised release is not authorized.
*See* 18 U.S.C. § 3583(b)(3).

defendant now faces. Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is not like picketing at the Capitol some other day, without other rioters present.

While each defendant should be sentenced based on their individual conduct, as we now discuss, this Court should note that each individual person who entered the Capitol on January 6 did so under the most extreme of circumstances. As a person entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob. Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement and likely would have smelled chemical irritants in the air. Make no mistake, no rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment. Had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases.

As represented in the Statement of Offense, at approximately 2:00 p.m. on January 6, 2021, a crowd had formed on the grounds of the United States Capitol and certain individuals in the crowd forced their way through, up, and over barricades, advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  At approximately 2:29 p.m., only minutes after the breach and when violent acts had begun by others, Parks and Schwemmer entered the Capitol through a door on the east side of the Capitol Building near the small House Rotunda on the first floor. They proceeded into that Rotunda, then headed up a nearby stairway to the second floor. Parks and Schwemmer admit that they joined a crowd on the second floor and began to sing the National Anthem. Within the fifteen minutes that they were in the Capitol, law enforcement officers began to corral the crowd and forced them to exit the building. Parks and Schwemmer were among those forced to exit the Capitol and their images and that of law enforcement officers standing near the exit were captured on video at approximately fifteen minutes after they had gained entry to the building.

Parks entered the building approximately thirty minutes after other rioters are believed to have first breached that door. By the time she entered, the doors were broken, but wide open. She would have heard an alarm sounding throughout the Capitol rotunda and its antechamber: a loud, high-pitched, continuous beeping, similar to a smoke alarm.

While the nature and circumstances of the offense supports a sentence of incarceration, for misdemeanor defendants who, like Parks, committed fewer of the non-exclusive factors listed above, the government is more likely to recommend a more lenient sentence.

### B.     The History and Characteristics of the Defendant

As set forth in the PSR, Parks does not have a criminal history. PSR ¶¶ 23-24. If the Sentencing Guidelines did apply to her offense of conviction, she would have zero points. USSG § 4A1.2(c)(2). Accordingly, she would be in Criminal History Category I. USSG §§ 4A1.1, 5A. Prior to this year and for approximately 38 years, Parks was self-employed as a piano technician. She is now retired. These factors support a more lenient sentence.

The government also notes that from the outset, through her attorney, Maria Jacob, expressed a desire to plead guilty, acknowledge her conduct, and promptly resolve her case. When recommending an appropriate sentence, the government gives significant weight to the defendant's early resolution of this case.

### C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[3] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases.

---

[3] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

### D.       The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demand deterrence. This was not a protest. *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights."). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—

that their actions will have consequences. There is possibly no greater factor that this Court must consider.

In short, the question of deterrence, here, is multi-faceted. The demands of general deterrence favor incarceration, but the need for specific deterrence may be met with a less severe sentence.

Here, Parks ignored the gravity of the consequences of her actions and her role in the storming of the United States Capitol Building. From the moment she set foot on the grounds of the Capitol, she likely had done so by stepping over and passing by overturned barriers. Photo 1 was taken at a time when Parks and Schwemmer were present on the Capitol's grounds and shows that they were present when individuals were scaling the walls of the western side of the Capitol and before they traveled to the eastside of the building.  They entered the Capitol building through a broken doorway and without being screened. Parks and Schwemmer took their places among others inside the Capitol who too exercised their will, rather than adhering to rules and regulations for being present inside the Capitol and therein violated the safety of the building and what was supposed to be taking place on January 6, 2021.  Parks' own desire was in full display.

While Parks has stated that she regrets her actions on January 6, 2021, and accepted responsibility, her actions, however small, contributed to the danger and violence of January 6, 2021. The government expects that the goal of specific deterrence will be obtained by the prosecution and conviction itself.  The sentence recommended by the government, a period of home detention, probation, and community service should serve that purpose.

### E.      The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case,  to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[4]  Each offender must be sentenced based on their individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[5] Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also, United States v. Valerie Ehrke,* 1:21-cr-00097 (PFF) Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan something similar.") (statement of Judge Friedman).

The government and the sentencing judges have already begun to make meaningful distinctions between offenders. Those who engaged in felonious conduct are generally

---

[4] Attached to this sentencing memorandum is an Exhibit containing tables providing additional information about the sentences imposed on other Capitol breach defendants.  The tables also show that the requested sentence here would not result in unwarranted sentencing disparities.

[5] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration. Those who trespassed but engaged in less serious aggravating factors deserve a sentence more in line with minor incarceration or home detention.

The government submits that the instant case falls into the latter home detention category, and is akin to *United States v. Jessica Bustle,* 21-CR-238-TFH, where the Government recommended, and the sentencing courts imposed sentences of probation with conditions of home detention and community service. Accordingly, a sentence of probation with a condition of 30 days home detention would not create any disparities with the sentences previously imposed in the Capitol breach cases.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.      Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in

18 U.S.C. § 3553(a). As detailed above, some of those factors support a sentence of incarceration

and some support a more lenient sentence. Balancing these factors, the government recommends

that this Court sentence Jennifer Parks to 30 days of home detention, three years of probation, 60

hours of community service, and $500 in restitution. Such a sentence protects the community,

promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a

consequence of her behavior, while recognizing her early acceptance of responsibility.

Additionally, such a sentence recognizes that some, but not all of the factors enumerated in

Section IV.A., above, apply to her case. It also allows continued monitoring of Parks in the event

of future participation in similar conduct.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By:      _/s/ Anita Eve_
ANITA EVE
Assistant United States Attorney, Detailee
PA Bar No. 45519

## CERTIFICATE OF SERVICE

On this 1st day of December 2021, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

/s/ Anita Eve
Anita Eve
Assistant United States Attorney